## Case No. 13,923.

### The THOMAS JEFFERSON.

### [3 Ben. 302.] 1

District Court, E. D. New York. June, 1869.

CHARTER-PARTY — BREACH — INSUFFICIENT SAIL — RUNNING ASHORE—NEGLIGENCE—DAMAGES.

1. A vessel was chartered to bring a cargo of oranges from Havana to New York, and, her sails being insufficient, she lost time on the voyage, and, on arriving off Cape May, put in, in anticipation of heavy weather, and came to anchor, and her master failed to keep a careful watch at night, and, the wind coming around so as to blow on shore, the chain parted and the vessel went ashore, the master's excuse for not dropping another anchor being that ice had formed on his decks, from snow which fell the evening before, so that the second anchor and chain were covered up by ice, and could not be let go. The deckload was discharged for the purpose of getting the vessel off, and the vessel was then got off and came to New York, without taking the deck-load on board again, and it was afterwards sent to New York by railroad and there tendered to the charterers, who refused to receive it, (it having been frozen and damaged,) and filed a libel against the vessel, to recover damages for the non-fulfilment of the charter-party. *Held*, that the vessel was chargeable with fault in not having her sails in proper condition, whereby the voyage was delayed.

2. The delay of the vessel being a fault, it was to be presumed against her that, but for that delay, she would not have been obliged to run into Delaware Bay, and the disaster there would not have occurred

3. The master was negligent in not keeping a vigilant watch while at anchor, and in not being prepared to drop a second anchor when the chain parted.

4. The freezing and consequent injury to the deck-load must, therefore, be attributed to the vessel.

5. She was chargeable with the injury to the deck-load, and with any damage sustained by the charterers, by the loss of any portion of her cargo by decay, arising from the delay of the vessel on the voyage.

This was a libel filed by Michael Morrow and others, charterers of the schooner Thomas Jefferson, to recover damages for the alleged non-fulfilment of a charter, by which the vessel was to bring a cargo of oranges from Havana. The libel alleged, that the vessel was not properly fitted with sails; that her master did not perform the voyage with proper diligence, and put into Delaware Bay, where, by negligence, he allowed the vessel to be blown ashore; that, having discharged the deck-load, he succeeded in getting the vessel off, but not with proper diligence, and then failed to take on board the deck-load; and that, by the decay of the cargo, consequent upon the delay and the freezing of the cargo, the libellants had been damaged. The answer denied any delay or negligence, and alleged that all the damage to the cargo was the result of perils of the sea. The evidence tended to show that the master of the schooner lost time on the voyage, by not carrying sail, and that, when the vessel reached Cape May, the weather be-

1 [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

ing threatening, it was determined, with the approval of one of the charterers, who was on board, to put into Delaware Bay, and the vessel anchored there about nightfall. It came on to snow, which turned to rain, and the wind, about midnight, came out from the northwest and blew heavily on shore, and the weather grew very cold, and about 4 a. m. the chain parted. Efforts were made to let go the other anchor, and to hoist sail, but they were found to be so covered with ice that nothing could be done, and the vessel went ashore. The deck-load was afterwards discharged, and the vessel got off in three or four days, during part of which time the weather continued very cold, and ice made freely. After getting off, the vessel sailed for New York, without taking the deck-load on board again, and it was sent to New York by railroad, where it was tendered to the charterers, who refused to receive it.

Benedict & Benedict, for libellants.

John E. Parsons, for claimants.

BLATCHFORD, District Judge. The libellants, owners of a cargo of oranges and pineapples, shipped them at Havana, on the 20th of February, 1868, on board of the schooner Thomas Jefferson, for New York, under a charter-party made of that vessel by the claimants, her owners, to some of the libellants, for a voyage from Havana to New York. The charter-money was duly paid. The charter-party excepted the dangers of the seas and of navigation. The libellants claim that, through fault and negligence on the part of the vessel, arising from the incompetency of her master, and defects in her sails, delays and disasters occurred, which protracted the voyage some eight days, and destroyed some of the fruit, so that it was not delivered to the libellants by the vessel. The answer denies all fault and negligence on the part of the vessel, and avers that, in the prosecution of her voyage, the vessel, by stress of weather and the force of the winds and the waves, was, on the 2d of March, 1868, driven into Delaware Bay, inside of Cape May, where, on the next day, she was, by force of the wind and of the floating ice, driven on shore; that, to float the vessel, it became necessary to send on shore a portion of her cargo of oranges, in a partially frozen condition, from the severity of the weather, which was done; that the vessel was unable to take on board again such portion of her cargo, having reference to the place and circumstances; but that the claimants, as soon as practicable, caused such portion of her cargo to be brought to New York and tendered to the libellants, and that any damage thereto was due to the perils and dangers of the seas, and not to any fault or negligence on the part of the vessel, or of those in charge of her.

I am satisfied that the libellants have

made out a case of negligence on the part of the master of the vessel, in respect to the occurrences in Delaware Bay, and of fault on the part of the vessel in having her sails in such poor condition that her master was obliged to heave his vessel to for some considerable time, on several occasions, and to shorten sail on other occasions, because he could not carry the sail which, under the same circumstances of wind and weather, he could have carried, and would have been bound, under the charter of the vessel, to carry, if the sails of the vessel had been in a proper condition. She put into Cape May on the eleventh day of her voyage, at which time, on the evidence, she ought to have been near New York, if not quite arrived there, under ordinary circumstances, if her sails had been in proper condition. It is shown that other vessels carrying full sail were seen outstripping her when she was going under shortened sail. Her delay being a fault, it is to be presumed against her that, but for such delay, she would not have been obliged to run into Delaware Bay, and the disasters there would not have occurred.

Under the circumstances which existed when she put in at Cape May, it was not improper for her to do so. But the evidence shows that her master was guilty of gross negligence, in not keeping his sails and windlass and his second anchor and chain free from ice, and in not having that anchor and chain in readiness for use, when the chain of the single anchor, with which he had anchored inside of Cape May, parted. If he had exercised proper vigilance in watching the weather and the wind, he could have been prepared to drop his second anchor the moment the chain to the first one parted. Instead of being vigilant he appears to have maintained no competent watch on deck, and to have known nothing himself of the condition of things which he testifies existed on his deck, arising from the change of wind and the sudden cold. Either such condition of things did not exist before the chain parted, and there was not the accumulation of ice on the sails and windlass and second anchor and chain which he now attempts to make out, as an excuse for the non-use of the second anchor, and for the drifting ashore of the vessel, or else he did not watch the formation of the ice, and attempt to check or obviate it. The master being in fault in allowing his vessel to be deprived of the use of her second anchor and chain, her driving on shore, and the freezing of her deck-load of oranges, and their loss by decay consequent thereon, and on their transportation to New York by land, and on the time consumed therein, must be attributed to fault on the part of the vessel. She must, therefore, be held liable for the value of such deck-load, which was wholly lost to the libellants, and which they were not obliged to accept in the condition in which it was tendered to them in New York, and for any legal

damages sustained by the libellants, by any loss or decay of any other portion of the fruit, or in respect of any of the cargo of the vessel, arising from the delay of the vessel on her voyage, or from her going on shore at Cape May. I have not at all considered the question of whether the vessel was got off the shore at Cape May as soon as she might have been with proper diligence, because, inasmuch as the right of action on the part of the libellants was complete when the vessel went ashore; such right would not have been impaired, if the vessel and her cargo had remained there to this day.

There must be a reference to compute the amount of the libellants' damages on the principles above indicated, and a decree for such amount, in their favor, with costs.